---

In re MERO.

(District Court, D. Connecticut. March 18, 1904.)

No. 1,219.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—FAILURE TO DISCHARGE LIEN.

A livery stable keeper's lien given by statute is not a lien "obtained through legal proceedings," which is dissolved by an adjudication in bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3450], nor does the failure of the debtor to discharge such lien at least five days before a sale of the property thereunder, as provided by the statute, constitute an act of bankruptcy under section 3, subd. 3 (30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]).

**2. SAME—INVOLUNTARY PETITION—ALLEGING ACT OF BANKRUPTCY.**

An allegation in a creditors' petition that defendant committed an act of bankruptcy by removing property with intent to hinder, delay, or defraud his creditors should be made as specific as possible, but greater detail of statement than creditors can probably furnish will not be required. It is not necessary to allege in what manner the defendant indicated his intent, which may be inferred from the facts alleged and proved.

**3. SAME—SUFFICIENCY OF PETITION.**

A petition in involuntary bankruptcy must set out the business in which the defendant was engaged, or state specifically that he was not engaged in one of the excluded classes by business or occupation.

In Bankruptcy. On creditors' petition for adjudication.

J. Birney Tuttle, for petitioners.

Harry W. Asher, for respondents.

PLATT, District Judge. The important parts of the petition are as follows:

"And your petitioners further represent that said John O. Mero is insolvent, and that within four months next preceding the date of this petition the said John O. Mero committed an act of bankruptcy, in that he did heretofore, to wit,

"(1) On the 18th day of January, 1904, suffer and permit, while insolvent, Robert H. Nesbit and Stephen J. Warner, two of his creditors, to obtain a preference through legal proceedings, to wit, by allowing said creditors to obtain a lien for $130.00 on two horses, a wagon, coach, harness, and blankets for the keep of said property, by virtue of section 4167 of the General Statutes of Connecticut, and has not, within at least five days before the sale of such property on said lien, vacated or discharged such preference.

"(2) Transfer while insolvent all or part of his said property by permitting and assisting James E. McGann, another creditor, to make an attachment on same for the purpose of permitting said attachment to become absolute under the statute laws of the state, and thereby transferring title to same under said laws, with the intent to prefer said James E. McGann over his other creditors.

"(3) That said John O. Mero has within four months next preceding the filing of this petition transferred and removed large sums of money, his property, to New York City, as your petitioners are informed and believe, with intent to hinder, delay, or defraud his creditors, and that Carrie A. Mero, the wife and agent of said insolvent, stated at a meeting of his creditors held on the —————— day of January, 1904, that said Mero had from July, 1903, up to about December 1, 1903, removed to New York about $7,000 in money, none of which money can now be found within this state."

To the petition said John O. Mero demurs, because the complaint fails to allege:

"First. (a) When sale of the property mentioned in paragraph 1 of said complaint took place; (b) that notice of the time and place of said sale was given to the defendant by said Nesbit & Warner; (c) that the bankrupt within four months before the filing of the petition, or after the filing of the petition and before adjudication, procured or suffered a judgment to be entered against him in favor of said Nesbit & Warner, and the effect of such judgment will be to enable the said Messrs. Nesbit & Warner to obtain a greater percentage of their debt than any other of such creditors of the same class.

"Second. (a) What property the said bankrupt permitted and assisted the said James E. McGann to attach; (b) when said attachment was brought; (c) how much the said James E. McGann claimed; (d) to what court the said writ was returnable and when so returnable; (e) that the said bankrupt has, being insolvent, within four months before the filing of the petition, or after the filing of the petition and before adjudication, procured and suffered judgment to be entered against himself in favor of said McGann, or made trans-

fer of any of his property, and the effect of such judgment or transfer will be to enable the said McGann to obtain a greater percentage of his debt than any other of such creditors of the same class; (f) that the bankrupt suffered or permitted, while insolvent, said James E. McGann to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of the property affected by such preference vacated or discharged such preference.

"Third. (a) Upon what dates said money was removed by said bankrupt to New York City, and to whom transferred or removed; (b) in what manner the said bankrupt indicated his intent to hinder, delay, or defraud his creditors by the transferring and removal of said large sums of money to New York City.

"Fourth. (a) That the defendant is neither a wage-earner nor a farmer."

He also moves to strike out that portion of subdivision 3 beginning with the words, "and that Carrie A. Mero," etc., to the end, because the words are evidential.

The petitioners ask leave to amend subdivision 1 by adding the following:

"On January 14, 1904, the said Nesbit & Warner caused a notice of the sale of said property to be served upon said John O. Mero by a constable of the town of New Haven, a copy of which notice is as follows:

"'New Haven, Ct., Jan. 14th, 1904.

"'John Mero, City—Dear Sir: You will please take notice that on the 21st day of January, 1904, at 10 o'clock in the forenoon, at number 141 Union street, we will sell at public auction the two horses, wagon, coach, harnesses, blankets, now held by us under a lien for the board, etc., of said horses and wagons, to satisfy a lien upon the same for $130.

"'Dated at New Haven this 14th day of January, 1904.
                              "'Robert H. Nesbit and
                              'Stephen J. Warner,
                              "'By L. Erwin Jacobs, Their Attorney.'"

If the amendment were allowed, the objection to subdivision 1, which appears in "c" of the first ground of demurrer, would still stare us in the face. It is clear that Nesbit & Warner claimed a lien under section 4167, Gen. St. Conn. 1902. This is commonly known as "the livery stable keeper's lien," and provides that, "when a special agreement shall have been made between the owners of any * * * horses * * * and any person who shall keep and feed such animals, regarding the price of such keeping, such animals shall be subject to a lien for the price of such keeping," and further provides for the detention of such animals, and for a sale at public auction, under certain regulations, if the debt shall not be paid.

It will be noticed that there is no allegation that a special agreement had been made regarding the price of keeping the animals upon which the lien is claimed, and also that an attempt was being made to sell at public auction "wagon, coach, harnesses, and blankets," as well as the "two horses" which might have been the subject of a special agreement as to keeping and feeding. For these reasons alone the demurrer is sound; but, as I am at the matter, it may be well to cover the entire ground.

In my opinion, if the lien were valid, the most favorable statement of facts which could be devised would not constitute an act of bankruptcy, under the third subdivision of section 3 of the act of July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]. Under sec-

tion 67f (30 Stat. 564 [U. S. Comp. St. 1901, p. 3450]), a mechanic's lien, properly filed, is not dissolved by adjudication, since it is not a "lien obtained through legal proceedings." In re Emslie, 102 Fed. 292, 42 C. C. A. 350. I am unable to discover the line of reasoning which will place any liens arising from state statutory provisions on a different footing. If any lien becomes so attached that it cannot be disturbed by adjudication, it would seem to follow, as a syllogism, that the failure to remove it cannot constitute an act of bankruptcy, under section 3, subd. 3, of the act of 1898.

The allegations under subdivision 1, as presented, or as they might be presented, are insufficient. Subdivision 2 is not pressed by the petitioners, and is clearly insufficient. As to subdivision 3, the motion to strike out the latter portion is granted. The remainder of the subdivision is demurrable as it stands; but I think that the petitioners can, by amendment, make it an issuable cause of bankruptcy.

It is important that the allegations in this respect shall be as specific as possible, but it would be unfair and contrary to the spirit and purpose of the bankrupt law to require greater detail than it is probable that creditors can furnish. I do not think it necessary to allege "in what manner the said bankrupt indicated his intent." If a man in his circumstances removed $7,000 in money to New York between July, 1903, and January, 1904, such fact would be one of the evidences of intent which might be introduced. Collier on Bankruptcy (4th Ed.) p. 32.

As to the further ground of demurrer, I can find nothing in the petition which enables me to form an opinion as to what Mero's business was. My information comes from other sources. It is certainly necessary, either to set forth the kind of business the respondent was engaged in so that one may be able to see that it is not of the excluded classes, or to state specifically that it was not of the excluded classes. An amendment is necessary to avoid the force of the fourth ground of demurrer.

The petitioners may amend their petition, in accordance with the suggestions above given, within 10 days by paying $10 costs. If it shall not be so amended, let the petition be dismissed. If it shall be so amended, let the respondent answer within 10 days thereafter.

The petition against Carrie A. Mero, as amended, is, in the main, satisfactory. The volume and page of record of the chattel mortgages should be inserted, and also an allegation that defendant is neither a wage-earner nor a farmer.